UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

IN RE:

KRIS J. BAIRD and                                    Chapter 13
GAYLE BAIRD

        Debtors.                         Bankruptcy No. 04-03738S


DECISION RE: PLAN CONFIRMATION

    Debtors Kris and Gayle Baird seek confirmation of their Amended Chapter 13 Plan.  The United States trustee and the standing trustee object to confirmation.  Hearing was held on February 15, 2005 in Sioux City.  Wil L. Forker appeared as attorney for Bairds.  John F. Schmillen appeared as attorney for Habbo G. Fokkena, the United States trustee.  Carol F. Dunbar appeared on her own behalf as chapter 13 trustee.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).  I have jurisdiction under 28 U.S.C. § 157(a) and (b)(1), 28 U.S.C. § 1334(a), and the order of reference entered by the District Court.

    Bairds filed their chapter 13 petition on September 23, 2004.  Mr. Baird, age 42, is employed as a planning manager for Wells Dairy in LeMars, Iowa.  He has a bachelor's degree in industrial engineering from the University of Utah and a master's degree in business administration in finance and industrial engineering from Xavier University.  His guaranteed gross annual salary is $96,000.00.  He anticipates two bonuses per year: an annual bonus of approximately 12% of his gross salary and a Christmas bonus of approximately 2% of his

salary.  These bonuses are not guaranteed.  His monthly take-home pay from his salary is $5,981.58, after deductions for payroll taxes and health insurance.

Mrs. Baird is not employed outside the home.  There was no evidence as to her educational background.  The couple has four children.  They have a 19-year old daughter who lives in Utah and who is planning to go to college there.  They provide her no support.  They have three dependent children--Stephanie, age 17, Matthew, age 14, and Sarah, age 13.

Bairds moved to Sioux City from Rochester, Minnesota, where Mr. Baird had been employed by IBM until he lost his job in June 2002.  He was unemployed for 15 months before he was hired by Wells Dairy in September 2003.  The Bairds have moved several times in the past 15 years.  Mr. Baird has been unemployed 29 months during these 15 years.  It was during the periods of unemployment, before moving to Sioux City, that Bairds incurred most of the $175,000.00 in credit card debt which they list in their schedules.

When they moved to Sioux City in 2003, they were experiencing financial difficulty because of the periods of Mr. Baird's unemployment.  Even before their arrival they were considering bankruptcy as an option to their financial problems, but first they wanted to stabilize their living situation.  They purchased a 2,800 square-foot house in Sioux City for $199,000.00.  The down-payment was $10,000.00 to $15,000.00 which they obtained by selling their home in

2

Rochester.

Also, they replaced one of their two vehicles, a truck with substantial miles on it. In January 2004, they purchased a new Chevrolet Impala. They paid $20,000.00 for the car after the application of GM credit-card credits and other incentives. They borrowed some or all of the net price. The monthly payment on their five-year car loan is $388.00. Bairds purchased the car because they wanted reliable transportation, and they believed that if they filed bankruptcy, they would not be able to get credit for some time afterward. Mr. Baird drives their other vehicle, a 1995 Suburban, to LeMars each day in order to provide his 17-year-old daughter access to the Impala, which he says she is more comfortable driving.

When they filed bankruptcy, Bairds' schedule J showed $5,839.00 in projected monthly expenses. Bairds amended schedule J on December 30, 2004, reducing the projected monthly expenses in the aggregate amount of $146.84. The reduction resulted from an increase of $28.00 in the monthly mortgage payment on the home and monthly reductions of $63.99 in electricity and heating, $46.85 for a cell phone, $4.00 for food, $20.00 for clothing, and $40.00 for transportation. In their amended schedules I and J, Bairds show $289.42 per month in projected disposable income.

The amended schedule J shows these monthly expenses:

    home mortgage payment                         $1,692.07

3

```
          electricity and heating fuel              236.00
          water and sewer                            75.00
          telephone                                  60.00
          cable tv                                   42.00
          internet                                   25.00
          water softener                             10.00
          home maintenance                          145.00
          food                                      856.00
          clothing                                  340.00
          laundry and dry cleaning                   40.00
          medical and dental services               105.00
          transportation                            449.66
          recreation, clubs, entertainment          100.00
          charitable contributions                  636.15
          life insurance                             46.00
          auto insurance                            183.33
          Impala payment                            388.00
          bank fees                                   6.95
          car license                                30.00
          home school expense                       130.00
          personal care                              74.00
          YMCA                                       22.00

          Total                                  $5,692.16
```

The home maintenance cost of $145.00 per month includes $85.00 per month to save for the installation of a new roof after three years. When Bairds purchased the home, they were informed as part of a home inspection that the roof may have only one to three years of useful life.

The charitable contribution of $636.15 is entirely a monthly church contribution. Bairds are members of the Church of Jesus Christ of Latter-Day Saints in Sioux City. Although Bairds would prefer to tithe based on Mr. Baird's total gross income, the contribution represents a compromise between their desire to pay creditors and their desire to meet their religious obligations. The contribution represents 10 per cent of Mr. Baird's monthly take home pay, with no

4

contribution out of tax refunds or bonuses.

The line item for monthly home school expenses includes recurring monthly home school costs plus a monthly amortization of the annual cost of the teaching packages for the school year. Mr. Baird testified that his son Matthew has a learning disability. Bairds prefer to teach their two younger children at home because of Matthew's learning disability and their lack of confidence in public school systems. They have not investigated the ability of the Sioux City Community School District to provide a sufficient quality education to their children. They introduced no evidence that the Sioux City school system could not educate their children or that a medical doctor or other professional has indicated home schooling was necessary to their children's best interest or to provide a satisfactory education.

The monthly cost of YMCA dues is for Mr. Baird. He said his doctor "recommended" exercise at the YMCA because of Mr. Baird's high blood pressure.

Mr. Baird testified that he and his wife have made an effort to cut expenses. The effort includes the compromise on the contribution to the church, giving away the family dog, and eliminating summer camp and piano lessons for the children.

On December 30, 2004, Bairds filed an Amended Chapter 13 Plan (doc. no. 17). It provides for payment to the trustee of $289.42 per month in projected disposable income plus the

5

payment of anticipated bonuses net of payroll deductions, tax refunds, and any other disposable income for 36 months. Mr. Baird expects the Christmas bonus, after withholding taxes, will be approximately $1,480.00 and the annual bonus, after withholding taxes, will be approximately $11,232.00. Also debtors expect annual tax refunds of $2,500.00.

From the payments to her, the trustee will pay administrative expenses, including her fee and also Bairds' attorney fee expenses estimated at $1,250.00, and the distribution on account of allowed unsecured claims. Bairds propose to make direct payments on their house mortgage and on the Impala loan. Debtors are involved in a dispute with Think Federal Credit Union over the validity or extent of its lien against Bairds' 1995 Chevy Suburban. If the lien is determined to be invalid or not to extend to the car, the credit union would be paid as an unsecured creditor by the trustee. If the lien is valid as to the Suburban, the Bairds propose to pay the credit union the value of the car, which they believe to be $2,600.00. It is unclear from the plan whether the value of the car would be paid directly by Bairds or through the trustee.

The United States trustee objects to the plan on the ground that not all of Bairds' disposable income is being applied to making payments under the plan. The trustee contends that not all of Bairds' projected expenses are reasonable and necessary. The standing trustee makes the same

6

objection.  Also, the standing trustee objects on the ground that Bairds' plan is not proposed in good faith because Bairds incurred significant debt for purchases of their home and their car at a time when they could not pay their debts and were contemplating bankruptcy.

If the chapter 13 trustee objects to confirmation of the plan, the court may not confirm it unless unsecured creditors are paid the allowed amounts of their claims, or unless the plan provides "that all of the debtor's projected disposable income to be received in the three-year period . . . under the plan will be applied to make payments under the plan."  11 U.S.C. § 1325(b)(1)(A) and (B).  "'Disposable income' means income which is received by the debtor and which is not reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependent of the debtor...."  11 U.S.C. § 1325(b)(2)(A).  The United States trustee may also raise and be heard on such an objection.  11 U.S.C. § 307.

Bairds estimate they will be paying at least $65,432.00 to the trustee for payments of administrative expenses and for distribution on allowed unsecured claims (Exhibit C).  The claims deadline has passed.  I take judicial notice that 18 claims have been filed.  Think Federal Credit Union filed a secured claim.  Bairds challenged the security interest.  If that claim is unsecured, filed claims total in excess of $190,000.00.  Bairds are not proposing to pay unsecured claims in full.

7

Bairds had paid $3,564.44 to the trustee as of the hearing on confirmation.  This figure includes $1,306.59 from Mr. Baird's 2004 Christmas bonus and $1,500.00 from a turnover of garnished funds by a creditor.  If no more bonuses were paid, and if Bairds paid all the monthly payments required by the plan, there would be available for distribution to unsecured creditors the sum of $10,773.37, after payment of trustee's fees and debtors' attorney.  If Bairds are correct about future plan payments, the distribution to unsecured creditors could be approximately 31 cents on the dollar.

I agree that this plan is not proposed in good faith and therefore is not confirmable under 11 U.S.C. § 1325(a)(3).  In determining whether a plan is filed in good faith, the court must consider a totality of the circumstances to inquire whether the plan "constitutes an abuse of the provisions, purpose or spirit of Chapter 13."  <u>Education Assistance Corp. v. Zellner</u>, 827 F.2d 1222, 1227 (8th Cir. 1987) (citing <u>United States v. Estus (In re Estus)</u>, 695 F.2d 311, 316 (8th Cir. 1982)).

Bairds moved to Sioux City when they were well aware of their financial problems.  They contemplated bankruptcy but decided that before filing, they would stabilize their living situation.  They purchased a home for approximately $200,000.00 and a new car for $20,000.00.  Monthly house payments, including an escrow payment for real estate taxes, are $1,692.06.  Bairds have failed to justify their purchase

8

of a $200,000.00 home when they were in financial trouble.  In consideration of fair treatment of creditors, it was an inappropriate decision.  They believed they owed at least $175,000.00 in credit card debt.  Yet they appeared to have made little, if any, effort to reduce the costs of housing in order to make a more substantial effort to satisfy their creditors.  I have the same view of the decision to purchase the car.  They wanted dependable transportation.  But there are dependable cars, both new and used, that are less expensive than $20,000.00.  The purchase of the house and the car immediately before filing this plan are evidence that the plan was not filed in good faith.

I agree also that certain projected monthly expenditures are not reasonable or necessary and that the plan does not propose the payment of an appropriate amount of projected disposable income to the trustee under 11 U.S.C. § 1325(b)(1)(B).

Bairds argue that they are paying a significant amount to the trustee over the three-year period of the plan.  Mr. Baird proposes to pay all his bonuses and tax refunds to the trustee.  I agree that the bonuses and tax refunds are significant, but they are not certain.  Because they are not certain, Bairds must plan to pay their living expenses out of guaranteed periodic income.  Bairds and the court must focus on the projected disposable income from such income.

Bairds propose to pay $289.42 per month to the trustee as

9

disposable income based on monthly income and expenditures. I find that some of Bairds' monthly expenses appear excessive and have not been justified. Because I view some of the expenditures as not reasonable or necessary, I find Bairds' projected disposable income insufficient to warrant confirmation of their plan.

First, because I believe that Bairds should not have purchased a home for $200,000.00 at a time when they were in financial trouble, I find that their monthly mortgage payment is not reasonable. Also they did not prove that the expenditure in that amount was necessary to obtain objectively satisfactory housing. Nor is the $85.00 per month amount set aside to purchase a roof repair after the completion of the proposed plan. If the roof can last until the plan is completed, Mr. Baird's income after plan completion can support the purchase of a roof. Bairds do not need to save during the plan to finance the future repair.

Other expenses are not justified as reasonable. "Personal care" in the amount of $74.00 was not supported or justified. The projection of $340.00 for clothing purchases was also not supported or justified. I recognize that Bairds have three growing children, but that alone does not justify a $4,000.00 annual clothing allowance.

Bairds' monthly payment on their car loan is $388.00. The Impala was purchased immediately before bankruptcy for $20,000.00. Bairds say it is worth slightly more than the

10

debt against it. They provided no evidence as to the interest rate on the loan. Therefore, I am unable to determine whether the Bairds could modify the loan to reduce the monthly payments. Also they failed to show that less expensive cars were not available.

Several expenses are projected for discretionary recreation. These include monthly projections of $42.00 for cable television, $25.00 for their internet service provider, $22.00 for Mr. Baird's YMCA dues, and $100.00 for general recreation. These total $189.00, and I find them excessive in light of Bairds' proposal to pay only $289.00 per month to the trustee.

Last I would point out that Bairds have failed to justify the home school expense of $130.00 per month. I recognize that they believe their son has a learning disability which they say makes home schooling a better option for his education. I do not doubt the sincerity of their belief. However, there is no showing they have any expertise in this area, and they offered no expert testimony to prove that home schooling is a necessary expenditure to provide a satisfactory education for their son and daughter. Mr. Baird admitted that they made no investigation of the Sioux City school system to determine the range and quality of services provided.

Confirmation of Bairds' amended Chapter 13 plan is denied. I will not confirm a three-year plan which is based on Bairds' staying in their present home. I cannot say

11

whether I would confirm a five-year plan under the same condition.  It would depend on Bairds' showing that a move to rental housing or the purchase of and move to a less expensive home would be economically damaging not only to them but also to the unsecured creditors.

IT IS ORDERED that judgment shall enter that confirmation of Bairds' amended Chapter 13 plan is denied.

DATED & ENTERED:
March 10, 2005

William L. Edmonds, Bankruptcy Judge

12